IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| DARYL T. THOMAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:10-cv-00876 |
| | ) | Judge Sharp/Bryant |
| WERTHAN PACKAGING, INC., | ) | |
| | ) | |
| Defendant. | ) | |

To:  The Honorable Kevin H. Sharp, District Judge

## REPORT AND RECOMMENDATION

### I. Introduction

By order entered October 20, 2010 (Docket Entry No. 3.), this matter was referred to the undersigned for case management and to recommend ruling on any dispositive motions.

Plaintiff Daryl T. Thomas, of LaVergne, Tennessee, filed this pro se action *in forma pauperis* under the Americans with Disabilities Act against defendant Werthan Packaging, Inc. ("Werthan").[1] (Docket Entry No. 1.) Plaintiff seeks compensatory damages, punitive damages, and injunctive relief. (Id.) Pursuant to Federal Rule of Civil Procedure 56(c), Werthan filed a motion for summary judgment on June 6, 2011. (Docket Entry No. 17.) Plaintiff responded on

---

[1] In his complaint, Mr. Thomas actually invoked the authority of Title VII of the Civil Rights Act of 1964 and the Civil Rights Act of 1991 (Docket Entry No. 1.). This appears to have been a mistake on his part. In its Answer, defendant Werthan denied that plaintiff's claims were brought pursuant to these two statutes, but admitted that the Americans with Disabilities Act ("ADA") and Americans with Disabilities Act Amendment ("ADAA") confer jurisdiction on this court. (Docket Entry No. 10 ¶ 1.) Plaintiff does not dispute this characterization of his claim, and the undersigned proceeds on the assumption that plaintiff brings his discrimination claim pursuant to the ADA and ADAA.

1

June 16, 2011 (Docket Entry No. 27.), and defendant replied on June 30, 2011. (Docket Entry No. 28.)

As further explained below, the undersigned recommends that defendant's motion for summary judgment be GRANTED and that plaintiff's action be DISMISSED.

## II. Background[2]

Plaintiff Daryl Thomas began working part time for defendant Werthan Packing, Inc. on January 4, 2008. (Docket Entry No. 18 at 2.) Werthan is an industrial manufacturer that produces commercial-grade paper bags used in packaging pet food. (Id. at 1.) Defendant initially assigned plaintiff to work as a helper on its Rotogravure press ("Gravure"), a large printing press that defendant uses to print labels and logos onto its paper bags. (Id. at 2.) Plaintiff's responsibilities included setting up the Gravure with needed ink and other supplies each day and supporting the other operators on the machine. (Id.)

On April 18, 2008, defendant hired plaintiff on full-time as an Assistant Gravure Operator. (Id.) As an Assistant Operator, plaintiff was responsible for helping the Operator maintain a steady print quality and steady level of output on the machine. (Id). He remained in this position for approximately four months. (Id.)

Sometime in July, plaintiff switched jobs and began working as an Operator on another machine, the Dusenberry Slitter ("Slitter"), which defendant used to trim excess scraps from its larger rolls of printed paper. (Id.) As a Slitter Operator, plaintiff earned less than he had as an

---

[2] To date, plaintiff has not provided this court with a concise summary of his version of the facts in this case. The undersigned therefore relies heavily on the statement of facts from defendant's memorandum in support of its motion for summary judgment. (Docket Entry No. 18.) Except where otherwise noted, plaintiff does not appear to dispute these facts or dates.

Assistant Operator on the Gravure. (Id.) Plaintiff asserts that defendant never told him that the change in jobs would lead to a pay cut and that he would not have switched jobs if he had known. (Docket Entry No. 27-1 at 32.)

Defendant did not actually reduce plaintiff's hourly wage until September. (Docket Entry No. 18 at 2.) Defendant claims that this was the result of a clerical error. (Id.) Plaintiff claims that defendant was retaliating against him for asking about back pay that defendant allegedly owed him. (Docket Entry No. 27-1 at 31.)

On October 8, 2008 plaintiff injured his hand on the Slitter. (Docket Entry No. 18 at 3.) While reaching for a piece of paper, he caught his hand between two metal rollers, crushing his index finger and lacerating his skin. (Id.) Defendant took him to the hospital, where doctors stitched his hand up and put it in a splint. Then, to facilitate the healing process, a worker's compensation doctor put plaintiff on a lifting restriction of five pounds. (Id.)

While the restriction was in place, defendant put plaintiff on light-duty work in its Rework Department. (Id. at 4.) His primary responsibilities were inspecting and repairing defective bags. (Id.) Defendant claims that its Rework Department is not a permanent department; when the plant's operations are running smoothly there are few defective bags and little need to devote resources to inspection and repair. (Id.) Plaintiff continued on restricted duty until December 23, 2008, when the workers' compensation doctor cleared him to return to his position as Slitter Operator. (Id.)

At some point in October or early November, while the lifting restriction was in place, plaintiff began experiencing pain in his lower back, prompting a visit to the Vanderbilt University Medical Center on November 2, 2008. A doctor there diagnosed him with a

3

lumbrosacral sprain and recommended that he avoid heavy lifting and bending. (Docket Entry No. 27-1 at 56-58.)

Plaintiff and defendant appear to disagree about the precise cause or causes of Mr. Thomas' back injury. Defendant claims that the injury was not work-related and further claims that plaintiff admitted as much at the time. (Docket Entry No. 18 at 4.) Plaintiff, in contrast, claims that a "work related incident" on November 2, 2008 exacerbated a pre-existing condition. (Docket Entry No. 27-1 at 78.)

On December 16, Plaintiff spoke to a manager regarding his back pain and the possibility of moving to a less physically demanding job. (Id.) The manager informed him that Werthan would not put plaintiff on a restricted duty assignment without a doctor's note and recommended that plaintiff have his doctor fax over any recommended work restrictions. Plaintiff called his doctor that same day requesting that the doctor send Werthan a fax. (Id.)

Plaintiff contends that his physician sent the required fax later that afternoon, December 16, 2008. (Id. at 82.) He further contends that defendant intentionally returned him to work on the Slitter knowing that it would aggravate his back injury, and that defendant's ultimate goal was to force plaintiff to quit. (Id.)

Defendant, in contrast, contends that it never received a fax from plaintiff's doctor and that managers only received a copy of the recommended work restrictions when plaintiff hand-delivered one on January 16, 2009. (Docket Entry No. 18 at 4.)

Both parties agree, however, that managers at Werthan knew of plaintiff's back-related work restrictions as of January 16 and that defendant then put plaintiff on unpaid leave pursuant to the Family Medical Leave Act ("FMLA"). (Id. at 5; Docket Entry No. 27-1 at 82.) Plaintiff

4

remained on FMLA leave until the statutory leave period expired on April 19, 2009. (Docket Entry No. 18 at 5.) Defendant claims that the company gave plaintiff an additional month of personal leave beginning April 20, 2009. (Id.) Plaintiff disputes this assertion and claims that defendant was simply trying to prevent him from collecting unemployment insurance (Docket Entry No. 27 at 1.)

On May 13, 2009, plaintiff filed a claim for unemployment insurance with the Tennessee Department of Labor and Workforce Development. The Department, however, concluded that plaintiff had not quit or been terminated as of that date, and was not eligible until he returned to his employer and offered to work again as soon as he was able to work again and perform his former duties. (Docket Entry No. 27-1 at 5.) The Department's decision was affirmed on appeal on July 21, 2009. (Id. at 14-15.)

On May 18, 2009, defendant issued a termination notice to plaintiff. (Docket Entry No. 27-1 at 6.) Defendant asserts that plaintiff quit. (Docket Entry No. 18 at 6.) Plaintiff rejects this assertion and claims that managers told him over the phone in April that they would not let him return to his job. (Docket Entry No. 27-1 at 3.)

Plaintiff filed this complaint, alleging violations of the Americans with Disabilities Act, worker's compensation law, and retaliation, on September 21, 2010. (Docket Entry No. 1.)

### III. Conclusions of Law

A. Standard of Review

To prevail on a motion for summary judgment, the movant must demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a

matter of law." FED. R. CIV. P. 56(a). All facts and inferences must be viewed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. Ltd., v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)).

While the movant bears the initial burden of proving the absence of any genuine issue of material fact, the non-moving party cannot simply "rest on its pleadings but must present some 'specific facts showing that there is a genuine issue for trial." Moore v. Holbrook, 2 F.3d 697, 699 (6th Cir. 1993) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)). Factual disputes are not material unless the resolution of those disputes "might affect the outcome of the suit." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If a factual dispute is "irrelevant or unnecessary" to the merits of the suit, it should not be counted. Id.

Because the plaintiff is proceeding *pro se*, his complaint must be "liberally construed" and "must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). However, "basic pleading essentials" must still be met. Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989).

B. Analysis of the Motion

Defendant Werthan seeks summary judgment against Plaintiff Thomas, pursuant to Federal Rule of Civil Procedure 56(a). (Docket Entry No. 17.) Specifically, defendant claims that (1) plaintiff's complaint fails to allege that he was a qualified individual with a disability under the Americans with Disabilities Act; (2) plaintiff's state law retaliation claim is barred by the statute of limitations; and (3) plaintiff's workers' compensation allegations fail to state a legally cognizable claim. (Docket Entry No. 18.) For the following reasons, the undersigned

6

agrees with defendant and recommends that defendant's motion for summary judgment be GRANTED.

*a. Plaintiff Thomas fails to make out a prima facie case of disability discrimination*

Defendant asserts that plaintiff has failed to make out a prima facie case for discrimination under the ADA, as he (1) has not demonstrated that he is disabled, (2) is not "otherwise qualified," and (3) has received reasonable accommodation from Werthan. (Docket Entry No. 18 pgs. 7-17.); See also Brenneman v. MedCentral Health Sys., 366 F.3d 412, 417 (6th Cir. 2004) (explaining the required elements of a plaintiff's prima facie disability discrimination claim).

The first required element in a disability discrimination claim is the disability itself. Id. Congress enacted the Americans with Disabilities Act to eliminate discrimination "against individuals with disabilities," 42 U.S.C. § 12101(b)(1), but limited the definition of disability to "a physical or mental impairment that substantially limits one or more major life activities," or a record of such impairment, or being regarded as having such an impairment. Id. § 12102(1)(A). The statute further notes that major life activities include, but are not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, *lifting*, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." Id. § 12102(2)(A) (emphasis supplied).

Plaintiff, in his complaint and response to defendant's motion to dismiss, has not clearly stated the grounds for his claimed disability. However, based on the facts provided, the most obvious ground would be "lifting." Defendant does not dispute the validity of plaintiff's heavy

agrees with defendant and recommends that defendant's motion for summary judgment be GRANTED.

*a. Plaintiff Thomas fails to make out a prima facie case of disability discrimination*

Defendant asserts that plaintiff has failed to make out a prima facie case for discrimination under the ADA, as he (1) has not demonstrated that he is disabled, (2) is not "otherwise qualified," and (3) has received reasonable accommodation from Werthan. (Docket Entry No. 18 pgs. 7-17.); See also Brenneman v. MedCentral Health Sys., 366 F.3d 412, 417 (6th Cir. 2004) (explaining the required elements of a plaintiff's prima facie disability discrimination claim).

The first required element in a disability discrimination claim is the disability itself. Id. Congress enacted the Americans with Disabilities Act to eliminate discrimination "against individuals with disabilities," 42 U.S.C. § 12101(b)(1), but limited the definition of disability to "a physical or mental impairment that substantially limits one or more major life activities," or a record of such impairment, or being regarded as having such an impairment. Id. § 12102(1)(A). The statute further notes that major life activities include, but are not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, *lifting*, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." Id. § 12102(2)(A) (emphasis supplied).

Plaintiff, in his complaint and response to defendant's motion to dismiss, has not clearly stated the grounds for his claimed disability. However, based on the facts provided, the most obvious ground would be "lifting." Defendant does not dispute the validity of plaintiff's heavy

lifting restriction (Docket Entry No. 18, pg. 8.), but argues instead that this restriction is not "substantial" enough to constitute a disability under the ADA (Id.)  The undersigned disagrees.

The Sixth Circuit addressed lifting restrictions in Scott v. G & J Pepsi-Cola Bottlers, Inc., 391 Fed. App'x 475 (6th Cir. Aug. 13, 2010), concluding that such restrictions do not of themselves constitute a disability.  In that case, an employee claimed that his employer had violated the ADA by firing him for a wrist injury and resulting twenty-pound lifting restriction. Id. at 476.  Upholding the lower court's grant of summary judgment to the defendant, the court of appeals emphasized that "evidence of [plaintiff's] lifting restrictions, standing alone, is insufficient to qualify as a 'disability' for the purposes of this claim." Id. at 480.  Other courts addressing the issue have come to similar conclusions.  See Snow v. Ridgeview Med. Ctr., 128 F.3d 1201, 1207 (8th Cir. 1997), abrogated on other grounds in Togerson v. City of Rochester, 643 F.3d 1031 (8th Cir. 2011) ("[A] general lifting restriction imposed by a physician, without more, is insufficient to constitute a disability within the meaning of the ADA."); Williams v. Avnet, Inc., 910 F. Supp. 1124, 1132 (E.D.N.C. 1995) (plaintiff with a twenty-five pound lifting restriction not disabled for purposes of ADA).

These cases, however, all addressed the ADA as it existed prior to Congress' 2008 Amendments.  In those amendments, Congress provided explicit rules of construction and required courts to apply the term "disability" expansively, in favor of broad coverage.  42 U.S.C. § 12102(4)(A). The 2008 amendments also added "lifting" as a major life activity.  Id. § 12102(1)(A); See also Zahurance v. Valley Packing Indus., Inc., 397 Fed. App'x 246, 248 (7th Cir. Oct. 21, 2010) ("It is true the ADA has been amended to expand the definition of 'major life activity' to include lifting.").  It is therefore unclear whether and to what extent Scott and similar

lifting-restriction cases still reflect the governing law.

It is similarly unclear, in light of the 2008 amendments, whether plaintiff's lifting restriction is a "substantial" one. Defendant draws the undersigned's attention to two cases holding that a lifting restriction of fifteen to twenty pounds is not substantial enough to constitute a disability. (Docket Entry No. 18 at 8-9.) (citing Halperin v. Abacus Tech. Corp., 128 F.3d 191 (4th Cir. 1997); Piascyk v. City of New Haven, 64 F. Supp. 2d 19 (D. Conn. 1999)). However, both of these decisions came down before Congress amended the ADA. Halperin addressed the question of whether a plaintiff was "substantially limited" in his ability to *work*, not his ability to *lift*. 128 F.3d at 199. Piascyk, in contrast, did discuss lifting as a major life activity. 64 F. Supp. 2d at 29-30. However, in rejecting plaintiff's assertion that a fifteen pound lifting restriction was "substantial," the court based its finding on that fact that plaintiff's lifting restriction did not appear to be permanent. Id. As a result, these two cases are inapposite and their persuasive authority minimal.

At the summary judgment stage, the moving party bears the burden of proving the absence of any "genuine dispute as to any material fact." FED R. CIV. P. 56(a). Plaintiff has provided evidence that he suffers from a degenerative disk disease and osteoarthritis and that his condition is progressive. (Docket Entry No. 27-1 at 82.) Defendant does not dispute this diagnosis but suggests that Mr. Thomas' own deposition testimony shows how modest and insubstantial his lifting restriction is. (Docket Entry No. 18-1.) In particular, when defendant's counsel asked plaintiff whether he believed he could lift more than twenty pounds without difficulty, he replied "I might can lift 20 pounds, but I don't know how long, you know." (Id. at 2). While Plaintiff's evidence of disability may or may not be enough to prevail at trial, the

9

undersigned finds that there remains a genuine dispute as to whether plaintiff was substantially limited in the major life activity of lifting.

The second prong of a prima facie case of disability discrimination is whether the plaintiff is "otherwise qualified" for his position. Brenneman, 366 F.3d at 417. An individual is otherwise qualified if he "with or without reasonable accommodation, can perform the essential functions" of his job. 42 U.S.C. § 12111(8). Here, defendant argues that lifting weights of over twenty pounds on a regular basis is an essential function of a Slitter operator. (Docket Entry No. 18 at 11.) The Sixth Circuit has emphasized that the employer has the burden of proving that a challenged job requirement is an essential function, Kleiber v. Honda of Am. Mfg., Inc., 485 F.3d 862, 869 (6th Cir. 2007), and that the test for whether a function is essential is whether its removal would "fundamentally alter" the position. Kiphart v. Saturn Corp., 251 F.3d 573, 584 (6th Cir. 2001) (quoting 29 C.F.R. § 1630.2(n)).

Federal Regulations provide a non-exhaustive list of factors for courts to consider when determining whether a challenged job function is essential. 29 C.F.R. § 1630.2(n)(3). These factors include: (i) the employer's judgment as to which functions are essential; (ii) written job descriptions prepared before advertising or interviewing applicants; (iii) the amount of time spent on the job performing the function; (iv) consequences of not requiring the incumbent to perform the function; (v) the terms of a collective bargaining agreement; (vi) the work experience of past incumbents in the job; and (vii) the current work experience of incumbents in similar jobs. Id.; see also Hoskins v. Oakland County Sheriff's Dept., 227 F.3d 719, 726 (6th Cir. 2000) (explicitly adopting these factors).

Defendant draws the undersigned's attention to two Sixth Circuit cases that, according to

defendant, recommend deferring to an employer's assessment of which functions are essential for a given job. (Docket Entry No. 18 at 10.) (citing Smith v. Leggett Wire Co., 220 F.3d 752, 763 (6th Cir. 2000); Lee v. City of Columbus, Ohio, 636 F.3d 245 (6th Cir. 2011)). Leggett Wire, however, is inapposite, as the case arose from a racial discrimination claim and addressed an employer's discretion in disciplining an employee for making threats to a manager. 220 F.3d at 757, 763. Lee is similarly off target, as the employer discretion at issue was a city police department's policy of making employees provide doctor's notes to their immediate supervisors, rather than to the human resources department. Lee, 636 F.3d at 257-58. Neither of these cases supports the proposition that courts should defer to an employer in deciding what functions are essential to particular jobs. Employer judgment is merely *one* of seven factors for the court to consider, and Congress has explicitly noted that the purpose of the ADA is to "ensure that the Federal Government plays a central role in enforcing" its protections for disabled individuals. 42 U.S.C. § 12101(b)(3). Therefore, defendant's recommendation that this court simply "defer to the employer's formulation" is not well-taken.

While the undersigned refuses to give undue weight to defendant Werthan's assessment in this matter, the available evidence nonetheless supports its contention that lifting twenty-pounds on a regular basis is an essential function of both the Slitter and Gravure operator positions.

Pursuant to factor two, written job descriptions, defendant has produced a document called "Essential Functions," listing functions that all hourly associates must be able to perform. (Docket Entry No. 19-20.) In particular, the document states that hourly associates "[m]ust be able to lift twenty-five (25) pounds frequently; fifty (50) pounds occasionally." (Id.) Plaintiff

11

Thomas signed this document on April 14, 2008, indicating that he was able to perform the above functions. (Id.) Defendant has also produced specific job descriptions for the positions of "rotogravure press operator trainee" and "slitter/rewinder operator." (Docket Entry Nos. 21-2 & 21-7.) Both documents specify lifting thirty pounds regularly and over one hundred pounds occasionally as requirements for the respective positions. (Id.) Neither document is signed or dated.

Regarding factor three, the amount of time spent performing the function, defendant has produced the Declaration of Mike Fuson, Plaintiff's immediate supervisor at Werthan. (Docket Entry No. 21.) This declaration provides more detailed descriptions of the job responsibilities for particular positions. Mr. Fuson asserts, for instance, that employees working on the Gravure must lift a metal shaft and paper roll roughly every hour and twenty minutes – seven times per eight-hour shift (Id. ¶¶ 25-26.) Together, the metal shaft and paper roll weigh roughly ninety pounds, and must be team-lifted by two employees. (Id. ¶¶ 21-22.) The employees must carry the shaft and roll ten to fifteen feet each time they lift it. (Id. ¶ 23.) Mr. Fuson also asserts that the Slitter has a comparable metal shaft that must be moved once per hour and twenty minutes, in addition to large parts, weighing thirty pounds or more, that a Slitter operator must maneuver. (Id. ¶¶ 30-33.)

Regarding factor four, consequences of not requiring the incumbent to perform the function, defendant contends that "[p]laintiff's request to have another employee perform his heavy lifting for him is akin to him having a full-time helper to aid him in the tasks he cannot perform." (Docket Entry No. 18 at 14.)

The record does not show any collective bargaining agreement governing Mr. Thomas'

employment at Werthan, so factor five is inapplicable.

Regarding factors six and seven, the past work experience of incumbents in the same job and present work experience of incumbents in similar jobs, defendant's list of "essential functions" (Docket Entry No. 19-20.) again appears relevant. Additionally, defendant has produced the Declaration of Jamie Gillaspie, a Human Resources Generalist at Werthan. (Docket Entry No. 22.) In her declaration, Ms. Gillaspie asserts that "[t]here are no employees at Werthan who make other employees do their lifting for them; every employee at Werthan is required to lift 25 pounds frequently as part of their essential job function." (Id. ¶ 4.)

Plaintiff disputes Defendant's assertion that regularly lifting twenty to thirty pounds was essential to his work at Werthan, but provides no evidence to support his claim. In his response to Defendant's Motion to Dismiss, plaintiff reproduces the signed "essential functions" sheet, adding his own hand-written objection that "[a]s assistant operator, you never have to do any lifting over 10 pounds." Compare Docket Entry No. 27-1 at 86 with Docket Entry No. 19-20. Plaintiff also stated, in his deposition, that he was qualified to work as gravure assistant operator because "if I'm assistant operator, then I got two other guys that can do the lifting for me." (Docket Entry No. 19-1 at 6.) Plaintiff does not appear to directly address his qualifications for slitter operator, his position at the time his employment at Werthan ended.

From the record, Plaintiff fails to raise a genuine issue of fact regarding his status as a "otherwise qualified" individual with a disability. While the moving party bears the burden of proof on summary judgment, the non-moving party cannot "rest on its pleadings but must present some 'specific facts showing that there is a genuine issue for trial.'" Moore v. Holbrook, 2 F.3d 697, 699 (6th Cir. 1993) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)).

Here, defendant has provided ample evidence to support its claim that lifting twenty or more pounds on a regular basis is an essential function of all of its hourly positions. In response, plaintiff has put forth general denials but no specific facts. The undersigned therefore concludes that lifting twenty or more pounds on a regular basis was an "essential" function of plaintiff's job at Werthan.

Furthermore, because plaintiff's doctor had restricted him from "heavy lifting" (Docket Entry No. 27-1 at 56-58.), defendant reasonably concluded that plaintiff was no longer qualified to perform his job. While the term "heavy lifting" is subjective, one of plaintiff's treating physicians declared that she understood "heavy" to mean loads of twenty pounds or more. (Docket Entry No.19-2 at 6-7.) Additionally, plaintiff's own complaint charges defendant with forcing him to continue working as a slitter operator "even though I had several injuries." (Docket Entry No. 1 ¶ 9.) The record clearly reflects that plaintiff Thomas was not able to perform the "essential" functions of his job at the time he was terminated. He therefore fails to make out a prima facie case of disability discrimination under the Americans with Disabilities Act.

Accordingly, the undersigned recommends that defendant's motion for summary judgment be GRANTED with respect to plaintiff's disability discrimination claim.


*b. Plaintiff's retaliation claim is barred by Tennessee's statute of limitations*

In addition to his disability discrimination claim, plaintiff alleges that defendant retaliated against him for seeking to vindicate his rights with respect to workers' compensation. (Docket Entry No. 27.) In its motion for summary judgment, defendant asserts that plaintiff's

retaliation claim is barred as untimely under Tennessee's statute of limitations. (Docket Entry No. 18 at 17.) The undersigned agrees.

In Headrick v. Union Carbide Corp., a panel of the Tennessee Court of Appeals determined that the statute of limitations for workers' compensation retaliation claims is one year. 825 S.W. 2d 424, 425-26 (Tenn. App. 1991). This limitations period starts to run when the employer provides the employee with "unequivocal notice of the employer's termination decision." Fahrner v. SW Mfg., Inc., 48 S.W. 3d 141, 144 (Tenn. 2001). Furthermore, research has not revealed any Tennessee case law suggesting that filing an EEOC claim, as plaintiff Thomas did, tolls the statute of limitations. See Jackson v. Falcon Transport Co., No. 3:08-0771, 2011 WL 1627319, at *3 (M.D. Tenn. Apr. 29, 2011) ("Tennessee law makes it clear that the statute of limitations for bringing a direct court action is not tolled while administrative charges are pending with the EEOC."); Jackson v. Burnett v. Tyco Corp., 932 F.Supp. 1039, 1044 (W.D. Tenn. 1996) ("Plaintiff has cited no Tennessee decisions, and the court has found none, indicating that the Tennessee courts would allow tolling under these circumstances.").

Here, plaintiff received his separation notice on May 18, 2009 (Docket Entry No. 25-6 at 17.) Plaintiff then waited until September 20, 2010 to file his initial complaint. (Docket Entry No. 1.) Plaintiff did not respond to defendant's statute of limitations argument and has not advanced any arguments of his own as to why the statute should have been tolled.

Accordingly, the undersigned finds plaintiff's retaliation claim barred by the Tennessee statute of limitations and recommends that defendant's motion for summary judgment be GRANTED in relation to that claim.

*c. None of plaintiff's remaining accusations state legally cognizable claims*

In his complaint, plaintiff alleges that defendant "violated worker's comp law" and also "violated and gave false information to the Tennessee Dept of Workforce and Labor." (Docket Entry No. 1.) In his response to defendant's motion for summary judgment, plaintiff appears to raise several other claims, such as his claims that defendant underpaid him for a period of time, (Docket Entry No. 27-1 at 31.), denied him vacation days to which he was entitled (Id.), and tried to force him to quit by making him work on the slitter while his back was injured. (Id. at 82.) To the extent plaintiff intends these claims as distinct causes of action against defendant, the undersigned recommends that they be DISMISSED for failure to state any legally cognizable claims.

The Sixth Circuit has stated that the basic purpose of pleadings under the Federal Rules of Civil Procedure is "to give adequate notice to the parties of each side's claims and to allow cases to be decided on the merits after an adequate development of the facts." Lewis v. ACB Business Services, Inc., 135 F.3d 389, 405 (6th Cir. 1998) (quoting Mayer v.Mylod, 998 F.2d 635, 637-38 (6th Cir. 1993)). Courts will hold pro se litigants, such as plaintiff Thomas, to a less stringent pleading standard, Grinter v. Knight, 532 F.3d 567, 577 (6th Cir. 2008), but this leniency "has limits." Pilgrim v. Littlefield, 92 F.3d 413, 416 (6th Cir. 1996).

In defendant's memorandum in support of its motion for summary judgment, defendant asserts that plaintiff has failed to show how his workers' compensation claim "arises to any cognizable cause of action under either state or federal law." (Docket Entry No. 18 at 22.) The undersigned agrees.

Plaintiff's filings with this court have never identified a common law or statutory right of

action supporting his workers' compensation or false information claims. In his complaint, plaintiff simply alleges that he "was put on F.M.L.A. it should have been file [sic] as worker' comp injury." (Docket Entry No. 1 ¶ 9.) The State of Tennessee, however, has made clear that the right to file for workers' compensation within the state's compensation framework "shall exclude all other rights and remedies of the employee . . . on account of the injury or death." TENN. CODE ANN. § 50-6-108(a). On its face, this statutory language appears to preclude rather than support plaintiff's claim.

Of course, Title 50, Chapter 6 of the Tennessee Code – governing worker's compensation – contains more than one hundred sections and has given rise to voluminous case law. Particular provisions and judicial decisions within this body of law may well create exceptions to the general rule and provide plaintiff with a private right of action based on the facts he alleges. But plaintiff points to no such exception, and it is not the job of this court to find him one.

Similarly, Title 50, Chapter 7, Part 7 of the Tennessee Code – governing the enforcement of unemployment insurance claims – contains no discernable right of private action. Therefore, even assuming that defendant lied to the Tennessee Department of Worforce and Labor, plaintiff has not adequately stated any *legal* grounds for relief.

In Kafele v. Lerner, Sampson & Rothfuss, L.P.A., an unpublished opinion, the Sixth Circuit confronted a similar set of circumstances – a *pro se* plaintiff with vague claims for relief. 161 Fed. App'x 487 (6th Cir. Dec. 22, 2005). The *pro se* plaintiffs in that case had filed a Fair Debt Collection Act claim against their mortgage company and its lawyers and further asserted claims of fraud, defamation, breach of fiduciary duties, and tortious interference. Id. at 489. Upholding the trial court's motion to dismiss, the court of appeals determined that plaintiffs had

17

failed to plead many of their claims with sufficient specificity. Id. at 491. The court of appeals explained that "[a]t the very least 'trial and appellate courts should not have to guess at the nature of the claim asserted.'" Id. (quoting Moore v. City of Harriman, 272 F.3d 769, 778 n.7 (6th Cir. 2001) (Suhreinrich, J., dissenting)).

Similarly, the undersigned will not simply guess at the nature of Plaintiff Thomas' remaining claims. Instead, the undersigned recommends that defendant's motion for summary judgment be GRANTED with respect to any and all remaining claims, due to their lack of specificity.

## IV. Recommendation

In light of the foregoing, the Magistrate Judge recommends that defendant Werthan Packaging's motion for summary judgment be GRANTED, and that the claims against it be DISMISSED.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. Thomas v. Arn, 474 U.S. 140 (1985); Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

**ENTERED** this 17th day of October, 2011.

                                 s/  
                                 JOHN S. BRYANT  
                                 UNITED STATES MAGISTRATE JUDGE